

**RECORDED DOCUMENTS**                                                   **FL-10A**

DATE: February 23, 2007

James W. Blevins
6224 Dryburg Road
Scottsburg, VA 24589

ATTN:   James W. Blevins


We have recorded the enclosed document(s) in the official records of the Copyright Office:

| VOLUME | 3545 |
|---|---|
| DOC. NO. | 859 |

The recording fee has been handled as follows:

| RECEIVED | $ |
|---|---|
| APPLIED | $ |
| REFUNDED (under separate cover) | $ |
| CHARGED TO YOUR DEPOSIT ACCOUNT | $ |


Sincerely yours,

Register of Copyrights


ENCL(S):

DOC(S): 1

```
****************************************************************
****************************************************************
** The Copyright Office plans to raise the fees for recording  **
** documents effective July 1, 2006.  The new fees are: basic  **
** recordation fee $95, additional titles per group of 10 or   **
** fewer $25 and special handling $435.  Please check our web  **
** site at www.copyright.gov for further information.          **
****************************************************************
****************************************************************
```

Library of Congress
U.S. Copyright Office
101 Independence Avenue SE
Washington, DC 20559-6000
www.copyright.gov

FL-10A   01/2004—12,000



# Certificate of Recordation

This is to certify that the attached document was recorded in the Copyright Office on the date and in the place shown below.

This certificate is issued under the seal of the United States Copyright Office.

| DATE OF RECORDATION |  |
|---|---|
| 13Dec05 |  |

| VOLUME | DOC. NO. |
|---|---|
| 3545 | 859 |
| VOLUME | DOC. NO. |

*Marybeth Peters*

Register of Copyrights and
Associate Librarian for Copyright Services

Office of the President

Mountain Empire Community College

3441 Mountain Empire Road
Big Stone Gap, Virginia 24219

December 5, 2005

Mr. James W. Blevins
6224 Dryburg Road
Scottsburg, VA 24589

Dear Mr. Blevins:

I received your correspondence of November 24, 2005. It is not clear to me that there are issues remaining regarding the water/wastewater web site nor is your purpose for sending correspondence with its single attachment clear. I assume that it announces your intent to register a copyright or otherwise file for some level of copyright privileges for all or an unspecified portion of the site. If my assumption is mistake, please let me know.

I call your attention to the Virginia Community College System (VCCS) Policy Manual's provision on Intellectual Property, specifically Section 12, a copy of which I am enclosing for your review. Please note, in particular, Section 12.0.3 that addresses Ownership of Intellectual Property and, in particular section 12.0.3, part a, (Assigned Duty), which specifies that the:

> "VCCS claims exclusive ownership of any intellectual property produced by a VCCS employee when produced as a result of an assigned duty except as otherwise provided by a separate written agreement or waiver which is executed by a duly authorized officer of a college or the VCCS."

Section 12.0.3, part d, (Significant Use of College Resources), further specifies that the:

> "VCCS claims an exclusive ownership interest in any intellectual property which was developed with the significant use of college resources except as otherwise provided by separate written agreement or waiver which is executed by a duly authorized officer of a college or the VCCS. The creator must advise the college's intellectual property policy administrator when the creation of intellectual property involves significant use of college resources."

The development of the water/wastewater web site involved both an "assigned duty" and a "significant use of college resources".

To underscore the "assigned duty" and "significant use of college resources", you may recall the following events surrounding the development of the water/wastewater site.

- In the spring of 1998, the college's Institutional Advancement officer wrote and secured a grant from the Virginia Department of Health to develop seven water courses in a distance education video format with an Internet site for each to provide supporting materials and access to a faculty member. The grant was to be in effect from June 1998 through June 1999.

- You were assigned to be the faculty member to work on the redesign of the courses and to be responsible for grant reporting. You also received release time from regular duties to perform these tasks (3 hours in the summer of 1998, 6 hours in each of the fall and spring terms of 1998-99, and 3 hours in the summer of 1999). Consultants were hired to produce the videotape courses.

- By the end of the spring term of 1999, it became clear that the consultants were not going to be able to complete the project. Only one videotape course had been produced and that was of poor quality. A call to the Virginia Department of Health requesting a shift in emphasis from a video-based to a web-based set of courses was approved and the grant was extended through the 1999-2000 academic year.

- In September of 1999, the college discovered that you had hired, without authorization, a recent graduate of the college's Environmental Science program to work on the water/wastewater site. Since you apparently were representing the college in this "hire", you were immediately asked to stop paying this individual. Subsequently this individual was hired by the college through the grant to develop the water/wastewater site. When grant funds were depleted at the end of the fall term, the individual was removed from the payroll. You, again and without authorization, hired the individual back to work on the site and, when this information became known, you were asked to stop the employment.

- Subsequent grants were written by the college for each year since (2000-01, 2001-02, 2002-03, 2003-04, and 2004-05), all funded by the Virginia Department of Health. These grants allowed the Environmental Science graduate to be rehired properly, eventually on a full-time basis, to develop the site. Other individuals were also hired to develop parts of the site.

- All of the Department of Health grants as well as required progress reports were written by individuals at the college other than you. Even though most of the work involving putting the courses up onto the website was accomplished by the Environmental Science graduate and others using college computer facilities and resources and paid for through the college secured grant, you were the instructor of record for the courses and those courses counted as a part of your expected teaching load.

It is clear, then, that the college's web site for water/wastewater was developed as an assigned duty and involved extensive and significant use of college resources. Since no written agreements to the contrary were executed, the VCCS does claim exclusive ownership of all courseware and related computer materials for this site.

Before proceeding, therefore, you are on notice that the material belongs to the Virginia Community College System and any attempt on your part to register a copyright for this material will be considered copyright infringement by us, and will be met with a vigorous legal challenge!

If you have any questions regarding this position, please let me know.

Sincerely,

Terrance E. Suarez, President

c:   Rita Woltz, System Counsel and Assistant Attorney General (w/o attachment)
     The Library of Congress, US Copyright Office (w/o attachment)

Office of the President

**Mountain Empire Community College**

3441 Mountain Empire Road
Big Stone Gap, Virginia 24219

December 5, 2005

Mr. James W. Blevins
6224 Dryburg Road
Scottsburg, VA 24589

Dear Mr. Blevins:

I received your correspondence of November 24, 2005. It is not clear to me that there are issues remaining regarding the water/wastewater web site nor is your purpose for sending correspondence with its single attachment clear. I assume that it announces your intent to register a copyright or otherwise file for some level of copyright privileges for all or an unspecified portion of the site. If my assumption is mistake, please let me know.

I call your attention to the Virginia Community College System (VCCS) Policy Manual's provision on Intellectual Property, specifically Section 12, a copy of which I am enclosing for your review. Please note, in particular, Section 12.0.3 that addresses Ownership of Intellectual Property and, in particular section 12.0.3, part a, (Assigned Duty), which specifies that the:

> "VCCS claims exclusive ownership of any intellectual property produced by a VCCS employee when produced as a result of an assigned duty except as otherwise provided by a separate written agreement or waiver which is executed by a duly authorized officer of a college or the VCCS."

Section 12.0.3, part d, (Significant Use of College Resources), further specifies that the:

> "VCCS claims an exclusive ownership interest in any intellectual property which was developed with the significant use of college resources except as otherwise provided by separate written agreement or waiver which is executed by a duly authorized officer of a college or the VCCS. The creator must advise the college's intellectual property policy administrator when the creation of intellectual property involves significant use of college resources."

The development of the water/wastewater web site involved both an "assigned duty" and a "significant use of college resources".

To underscore the "assigned duty" and "significant use of college resources", you may recall the following events surrounding the development of the water/wastewater site.

 

- In the spring of 1998, the college's Institutional Advancement officer wrote and secured a grant from the Virginia Department of Health to develop seven water courses in a distance education video format with an Internet site for each to provide supporting materials and access to a faculty member. The grant was to be in effect from June 1998 through June 1999.

- You were assigned to be the faculty member to work on the redesign of the courses and to be responsible for grant reporting. You also received release time from regular duties to perform these tasks (3 hours in the summer of 1998, 6 hours in each of the fall and spring terms of 1998-99, and 3 hours in the summer of 1999). Consultants were hired to produce the videotape courses.

- By the end of the spring term of 1999, it became clear that the consultants were not going to be able to complete the project. Only one videotape course had been produced and that was of poor quality. A call to the Virginia Department of Health requesting a shift in emphasis from a video-based to a web-based set of courses was approved and the grant was extended through the 1999-2000 academic year.

- In September of 1999, the college discovered that you had hired, without authorization, a recent graduate of the college's Environmental Science program to work on the water/wastewater site. Since you apparently were representing the college in this "hire", you were immediately asked to stop paying this individual. Subsequently this individual was hired by the college through the grant to develop the water/wastewater site. When grant funds were depleted at the end of the fall term, the individual was removed from the payroll. You, again and without authorization, hired the individual back to work on the site and, when this information became known, you were asked to stop the employment.

- Subsequent grants were written by the college for each year since (2000-01, 2001-02, 2002-03, 2003-04, and 2004-05), all funded by the Virginia Department of Health. These grants allowed the Environmental Science graduate to be rehired properly, eventually on a full-time basis, to develop the site. Other individuals were also hired to develop parts of the site.

- All of the Department of Health grants as well as required progress reports were written by individuals at the college other than you. Even though most of the work involving putting the courses up onto the website was accomplished by the Environmental Science graduate and others using college computer facilities and resources and paid for through the college secured grant, you were the instructor of record for the courses and those courses counted as a part of your expected teaching load.

It is clear, then, that the college's web site for water/wastewater was developed as an assigned duty and involved extensive and significant use of college resources. Since no written agreements to the contrary were executed, the VCCS does claim exclusive ownership of all courseware and related computer materials for this site.

C-C
Using copyright
without permission



# VIRGINIA COMMUNITY COLLEGE SYSTEM
*James Monroe Building • 101 North Fourteenth Street • Richmond, Virginia 23219*

December 12, 2007

James W. Blevins
6224 Dryburg Road
Scottsburg, Virginia 24589

RE: *Water/Wastewater Website*

Dear Mr. Blevins,

I am responding to the various letters that you have sent to me, Dr. Terry Suarez and Nita Nelson at Mountain Empire Community College ("MECC"). From your correspondence, I have been unclear regarding whether you are represented by legal counsel or not concerning the water/wastewater website issue. If you are represented by an attorney for this matter, please forward this letter on to that individual. If you are not represented by counsel, then please continue reading what is addressed below.

As Dr. Suarez pointed out in his December 5, 2005 response to one of your letters, your purpose and reasoning regarding the issue of the water/wastewater website is not entirely clear. Although Dr. Suarez warned you about registering a copyright for the site in your name, our research indicates that you apparently registered a copyright for the website listing Mountain Empire Community College (Big Stone Gap, VA) as the sole party. Further research indicates that in registering this copyright you indicated to the U.S. Copyright Office that the website was a work for hire for MECC and the VCCS. The title of the copyright is even *"Water/wastewater web site / by Virginia Community College System, employer for hire."* Under the names section the registration lists Dr. Terrance E. Suarez and you (James W. Blevins), both in conjunction with MECC and the VCCS. (Attached for your review is a copy of the U.S. Copyright Office record for the water/wastewater website.)

The VCCS and MECC have no issue with your name appearing in the name section of the copyright record, and we are not asking that you remove it. However, as Dr. Suarez has already explained to you,[1] and as the copyright you registered indicates, the water/wastewater website was a work for hire. MECC has the right to claim exclusive copyright ownership of the website as a work for hire for two reasons: 1) the website's creation was an assigned duty; and 2) a significant use of college resources was employed in the website's creation.

---

[1] Attached for your review are again the events stated by Dr. Suarez to underscore the "assigned duty" and "significant use of college resources" for the water/wastewater website.

*804-819-4901, FAX 804-819-4766, TDD 804-371-8504*
*An Equal Employment Opportunity/Affirmative Action Employer*
*www.vccs.edu*

James W. Blevins
December 12, 2007
Page 2



    Contrary to your assertions, the website's creation was given to you as an assigned duty because MECC specifically tasked you with creating it and granted you release time to complete that task. Thus, despite the fact that MECC did not specifically call your assignment an assigned duty, the fact that the arrangement fits the definition of "assigned duty" in § 12.0.1 of the VCCS Policy Manual[2] means that it was one. That section states:

> [A] task or undertaking pursuant to a contractual obligation, specific assignment, or directive.... an obligation or specific direction to develop particular teaching materials, to write a particular article, *or to produce a particular computer program* is an assigned duty.

(Emphasis added.) You were given a specific assignment to create a particular computer-based program, and given release time to do it, and therefore, you were given an assigned duty. The fact that you were still being paid your salary during this period in essence means that you were compensated for the website's creation. I again point your attention to § 12 of the VCCS Policy Manual, titled Intellectual Property. Section 12.0.3(a) states:

> VCCS claims *exclusive ownership* of any intellectual property produced by a VCCS employee when produced as a result of an assigned duty except as otherwise provided by a separate written agreement or waiver which is executed by a duly authorized officer of a college or the VCCS.

(Emphasis added.) Thus, because you were specifically given release time and directed to produce a computer program, you were given an assigned duty that allowed the VCCS to claim exclusive ownership of the final website that you created. You would have had to have entered into a separate written agreement or waiver with MECC for the ownership of the website to be yours or even partly yours. No such agreement was either negotiated or entered into by you and MECC.

    The website also used significant college resources, because its construction and maintenance used, and has continued to use, money from MECC and federal grant money disbursed by the Virginia Department of Health. Further, MECC employed and paid other individuals to assist with the website's creation. Pursuant to § 12.0.1 of the VCCS Policy Manual:

> [The] VCCS claims an *exclusive ownership interest* in any intellectual property which was developed with the significant use of college resources except as otherwise provided by separate written agreement or waiver which is executed by a duly authorized officer of a college or the VCCS. The creator must advise the

---

[2] http://www.vccs.edu/WhoWeAre/PolicyManual/tabid/103/Default.aspx or by visiting the VCCS website and clicking *Manual* under the *Faculty & Staff* menu

James W. Blevins
December 12, 2007
Page 3

>college's intellectual property policy administrator when the creation of intellectual property involves significant use of college resources.

(Emphasis added.) Thus, although you claim to have contributed some of your own written material for the creation of the site, the VCCS has a right to claim exclusive ownership of the website due to the use of many other college resources in developing the site, and because you did not negotiate or enter into any agreement with MECC for any additional compensation beyond your salary earned during the applicable release-time, as required for any exception to the VCCS Policy Manual's provisions.

For these reasons, we maintain that the copyright and website are the property of MECC and the VCCS. Therefore, you have no claim to any ownership interest or profit from the website, be it in the form of a claim for royalties or from a claim of infringement of the copyright held for it by MECC and the VCCS. We will not negotiate such ownership terms with you at this point, as you have already been paid for your contribution to the website's creation through the release time previously given to you.

Therefore, I will reiterate for you again, and you are hereby on notice, that the copyright belongs to the VCCS and any attempt on your part to profit from the website will be considered copyright infringement. The VCCS reserves all rights available at law to vigorously protect that property interest. Nevertheless, neither MECC nor the VCCS have any objection to you continuing to use any of your own written materials that you may have used when assisting with the website's creation.

I hope that I have addressed any and all remaining issues associated with MECC's Water/Wastewater Website, and I wish you the best during this holiday season.

Sincerely,

*Rita R. Woltz*

Rita R. Woltz, Esq.
System Counsel, VCCS
Assistant Attorney General, Commonwealth of Virginia

Enclosures

```
Type of Work:        Recorded Document

Document Number:     V3545D859

Date of Recordation:
2005-12-13

Entire Copyright Document:
V3545 D859 P1-3

Date of Execution: 5Dec05

Title:               Water/wastewater web site / by Virginia Community College
System, employer for hire.

Party 1:             Mountain Empire Community College (Big Stone Gap, VA)

Names:               Suarez, Terrance E.
Blevins, James W.
Mountain Empire Community College (Big Stone Gap, VA) Virginia Community College
System

================================================================================


++++++++++++++++++++++++++++++++++++++++
The Library of Congress
United States Copyright Office
101 Independence Ave., S.E.
Washington, D.C. 20559-6000
202-707-3000
```

Attachment from Dr. Suarez's Letter, December 5, 2005

- In the spring of 1998, the college's Institutional Advancement officer wrote and secured a grant from the Virginia Department of Health to develop seven water courses in a distance education video format with an Internet site for each to provide supporting materials and access to a faculty member. The grant was to be in effect from June 1998 through June 1999.
- You were assigned to be the faculty member to work on the redesign of the courses to be responsible for grant reporting. You also received release time from regular duties to perform these tasks (3 hours in the summer of 1998, 6 hours in each of the fall and spring terms 1998-99, and 3 hours in the summer of 1999). Consultants were hired to produce the videotape courses.
- By the end of the spring term of 1999, it became clear that the consultants were not going to be able to complete the project. Only one videotape course had been produced and that was of poor quality. A call to the Virginia Department of Health requesting a shift in emphasis from a video-based to a web-based set of courses was approved and the grant was extended through the 1999-2000 academic year.
- In September of 1999, the college discovered that you had hired, without authorization, a recent graduate of the college's Environmental Science program to work on the water/wastewater site. Since you apparently were representing the college in this "hire", you were immediately asked to stop paying this individual. Subsequently this individual was hired by the college through the grant to develop the water/wastewater site. When grant funds were depleted at the end of the fall term, the individual was removed from the payroll. You, again and without authorization, hired the individual back to work on the site and, when this information became known, you were asked to stop the employment.
- Subsequent grants were written by the college for each year since (2000-01, 2001-02, 2002-03, 2003-04, and 2004-05), all funded by the Virginia Department of Health. These grants allowed the Environmental Science graduate to be rehired properly, eventually on a full-time basis, to develop the site. Other individuals were also hired to develop parts of the site.
- All of the Department of Health grants as well as required progress reports were written by individuals at the college other than you. Even though most of the work involving putting the courses up onto the website was accomplished by the Environmental Science graduate and others using college computer facilities and resources and paid for through the college secured grant, you were the instructor of record for the courses and those courses counted as a part of your expected teaching load.



the author who created the work. Only the author or those deriving their rights through the author can rightfully claim copyright.

In the case of works made for hire, the employer and not the employee is considered to be the author. Section 101 of the copyright law defines a "work made for hire" as:

1. a work prepared by an employee within the scope of his or her employment; or
2. a work specially ordered or commissioned for use as:
   - a contribution to a collective work
   - a part of a motion picture or other audiovisual work
   - a translation
   - a supplementary work
   - a compilation
   - an instructional text
   - a test
   - answer material for a test
   - an atlas

if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

The authors of a joint work are co-owners of the copyright in the work, unless there is an agreement to the contrary.

Copyright in each separate contribution to a periodical or other collective work is distinct from copyright in the collective work as a whole and vests initially with the author of the contribution.

### Two General Principles

- Mere ownership of a book, manuscript, painting, or any other copy or phonorecord does not give the possessor the copyright. The law provides that transfer of ownership of any material object that embodies a protected work does not of itself convey any rights in the copyright.
- Minors may claim copyright, but state laws may regulate the business dealings involving copyrights owned by minors. For information on relevant state laws, consult an attorney.

### Copyright and National Origin of the Work

Copyright protection is available for all unpublished works, regardless of the nationality or domicile of the author.

Published works are eligible for copyright protection in the United States if *any* one of the following conditions is met:

- On the date of first publication, one or more of the authors is a national or domiciliary of the United States or is a national, domiciliary, or sovereign authority of a treaty party,* or is a stateless person wherever that person may be domiciled; or
- The work is first published in the United States or in a foreign nation that, on the date of first publication, is a treaty party. For purposes of this condition, a work that is published in the United States or a treaty party within 30 days after publication in a foreign nation that is not a treaty party shall be considered to be first published in the United States or such treaty party, as the case may be;
- The work is a sound recording that was first fixed in a treaty party; or
- The work is a pictorial, graphic, or sculptural work that is incorporated in a building or other structure, or an architectural work that is embodied in a building and the building or structure is located in the United States or a treaty party; or
- The work is first published by the United Nations or any of its specialized agencies, or by the Organization of American States; or
- The work is a foreign work that was in the public domain in the United States prior to 1996 and its copyright was restored under the Uruguay Round Agreements Act (URAA). Request Circular 38B, *Highlights of Copyright Amendments Contained in the Uruguay Round Agreements Act (URAA-GATT)*, for further information.
- The work comes within the scope of a Presidential proclamation.

*A treaty party is a country or intergovernmental organization other than the United States that is a party to an international agreement.

### What Works Are Protected?

Copyright protects "original works of authorship" that are fixed in a tangible form of expression. The fixation need not be directly perceptible so long as it may be communicated with the aid of a machine or device. Copyrightable works include the following categories:

1. literary works
2. musical works, including any accompanying words
3. dramatic works, including any accompanying music
4. pantomimes and choreographic works
5. pictorial, graphic, and sculptural works

FLSA-1

28

N

**WebMail - RE: appointment**

[Delete] [File] [Create] [Reply] [Reply All] [Forward] [Previous] [Next] [Options] [Index]
[Help]

**Date Sent:** Friday, March 11, 2005 3:52 PM
**From:** jblevins <jblevins@me.vccs.edu>
**To:** Rosa-lee Moore <rmoore@me.vccs.edu>
**Subject:** RE: appointment

Status  ☐ Urgent  ☐ New

Dear Rosa.
Thank You
Jay

>====== Original Message From Rosa-lee Moore <rmoore@me.vccs.edu> ======
>Jay,
> I just spoke with Richard about all the incompletes we have from the
>Fall semester. He wants me to get with you week after next, maybe
>Monday the 21st, and see if we can see what students have completed
>their work, those that haven't to contact them. Also, we spoke about
>you leaving the program. I told him you said you were leaving in May
>when your contract was out. I don't know if you know this or not, but
>according to Richard you can't just LEAVE, you have to put it in writing
>that you are retiring. If you just don't renew your contract that will
>not give them enough time to find someone to take over the program and
>the program will the CANCELLED, meaning we will all be out of a job. I
>think you should talk with him about this and make the appropriate
>actions, if

you are seriously considering leaving in May. Thanks a
>bunch! I'd really hate to lose this job as I'm sure all of us would.
>
>Rosa

Index
A-Virginia Law Letter
B-Instructors brief history of actions
C -Goals set by instructor
D-Stratagy set by instructor
E-Value
F-Partial list of witnesses
G-Course value
H-Evaluation of plan
I-Chain
J-President made aware
K-Patty Cantrell made aware
L-Donna Stanley made aware solutions proposed
M-Alternate aproach
N-classes to be built
O-Initial grant disbursment
P-Instructors initial Disclaimer
N-Instructors Evaluation

Discrimination