IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| JAMES W BLEVINS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TERRY SUAREZ, et al., )<br>)<br>Defendants. )<br>)<br>)<br>) | Case No. 4:08CV00014<br><br>**MEMORANDUM OPINION**<br><br>By: Jackson L. Kiser<br>    Senior United States District Judge |

Before me is the Defendants' Motion to Dismiss [10]. Because the Plaintiff has failed to state a legally valid claim, the Defendant's Motion will be GRANTED. However, the Plaintiff is granted thirty (30) days from the date of the Order to file an amended complaint, if he so chooses.

In this case, the court has strenuously attempted to understand, interpret, and search for a valid claim amidst the Plaintiff's Complaint and its many exhibits. The court has even attempted to glean facts from among the Plaintiff's many documents in order to piece together a claim that would survive the Defendants' Motion to Dismiss. Despite the court's best efforts, the material contained in the Plaintiff's Complaint is insufficient to establish a valid claim under the law.

### I. STATEMENT OF THE FACTS

James W. Blevins (Blevins), the Plaintiff, was employed as a faculty member at Mountain Empire Community College (MECC). (Compl. ¶ 2.) Blevins in his Complaint alleges federal claims under the Copyright Act, the Fair Labor Standards Act, and the Equal Pay Act. (Compl. ¶ 5.)

Blevins claims he worked at MECC for thirty-three (33) years prior to filing this Complaint. (Compl. ¶ 2.) In 1998, the MECC Institutional Advancement officer wrote a grant to develop a "distance water/wastewater program" (the Program), and was awarded funds by the Virginia Department of Health (VDH) from June, 1998 through June, 1999. (Compl. Ex. D.) The grant was to be used to develop seven video distance learning courses for MECC, with associated Internet sites for each video to provide supporting materials and access to a MECC faculty member. Id.

MECC assigned Blevins to develop the Program and be responsible for grant reporting. Id. Blevins received compensation and release time from regular duties to perform the tasks (3 hours of compensation the summer of 1998, 6 hours of release time for fall of 1998, 6 hours of release time for the spring of 1999, and 3 hours of compensation during the summer of 1999). Id.

In the spring of 1999, it was determined the videos were not being developed in a timely manner, so in 1999, prior to renewal of the grant, VDH agreed the course should be web-based and gave MECC another year to develop the Program. Id. In September of 1999, MECC discovered Blevins hired a student to work on the web site, who was paid by Blevins, without authorization by MECC. Id. MECC directed Blevins to cease payment to the student (who was subsequently hired through proper channels), but when funding was temporarily suspended, Blevins began paying the student from his personal funds again. Id. The student was working on the waste water project using MECC computers, equipment, and resources. Id.

Following the 1999 grant renewal, MECC hired a web master and subject area technicians to research and develop lessons for the web site while Blevins remained the instructor of record, which counted as part of his teaching load. (Compl. Ex. D.) No other written agreements between MECC and Blevins were entered into indicating a change from their

2

employer-employee relationship or that Blevins' efforts would be considered separate from his duties as Associate Professor at MECC. Id.  Further, the website for water/wastewater was developed as an assigned duty and involved extensive use of college resources and personnel. Id.

At some point in the process, Dr. Debbie Sydow, Dean of Academic Instruction, assumed control of the Program and allegedly "browbeat" Blevins in front of subordinates. (Compl. Ex. W.)  Once the project was taken away from Blevins, he hired Rosa Moore with his own funds and worked allegedly 6000 hours building the site. Id.

In an April, 2000 email, it was memorialized that Blevins was unhappy with the way the website was being produced. (Compl. Ex. A-I.)  He expressed his objections to how the grant money was being handled. Id.  He also seemed to ask for compensation or future grant commitments and covenants not to interfere with his work from the MECC. Id.  Blevins was told there was an appropriate budgetary process to express his demands, and he was advised as to that process.  Blevins also complained about how he was treated by Sydow, and was invited to file a formal grievance or complaint with the college. Id.

On September 23, 2003, Blevins received an excellent professional evaluation by Dr. Richard Phillips, Dean of MECC Technologies Department (3.67/4.00). (Compl. Ex. A-P, A-Q.) In 2004, Blevins, without permission from MECC and outside of the MECC guidelines, solicited funds for the project and received a notice of censure in his personnel file by Dr. Phillips. (Compl. Ex. Q.)

In March, 2005, Blevins received an email from Ms. Moore stating that he should speak with Dr. Phillips if Blevins intended to leave MECC at the end of his contract in order to allow MECC to have time to find his replacement. (Compl. Ex. N.)  Ms. Moore stated the Program

3

could be canceled if Blevins was not timely in giving his notice, and she would "really hate to lose this job as I'm sure all of us would." (Compl. Ex. N.)

On December 5, 2005, Blevins applied for a copyright for the water/wastewater website, but he named MECC as the sole party in a "for hire" capacity. (Compl. Ex. K.) His name, along with Suarez, MECC, and VCCS are located in the "names" section. Id. On December 12, 2005, VCCS counsel and Assistant Attorney General Rita Woltz clearly spelled out that VCCS claims exclusive control of the copyright as the employer of the Program. Id.

Mr. Blevins also alleges that after leaving MECC, he came to learn that prospective employers (upwards of seventeen but Blevins only names one, the Southside Virginia Community College) were contacted by MECC to Blevins' detriment in alleged retaliation for the complaints he has filed immediately before and after leaving MECC. (Compl. Ex. R - T.) However, Blevins qualifies his allegation in his Equal Employment Opportunity Commission (EEOC) complaint, filed April 26, 2006, stating, "this *probably* was in retaliation to a grievance filed when I left." (Compl. Ex. S.)(emphasis added). On May 25, 2006, the EEOC dismissed the claim stating, "the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Compl. Ex. P.)

## II. PROCEDURAL BACKGROUND

Blevins filed his Complaint on May 5, 2008 and appears before this court as a pro se plaintiff alleging:

1. Copyright Infringement
2. Violation of the Fair Labor Standards
3. Violation of the Equal Pay Act

Previously, Blevins filed a charge with Equal Employment Opportunity Commission (EEOC). On May 25, 2006, the EEOC dismissed the claim stating, "the EEOC is unable to conclude that the information obtained establishes violations of the statutes." (Compl. Ex. P.)

On August 1, 2008, this court granted the Defendants' Motion for Extension of Time to Answer, and in compliance with that Order, the Defendant's have filed their Motion to Dismiss based on the Federal Rules of Civil Procedure 12(b) (1) and 12(b) (6). Fed. R. Civ. P. 12(b)(1), 12(b)(6).

### III.  STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is limited to "the extraordinary case where the pleader makes allegations that show on the face of the complaint some insuperable bar to relief." Browning v. Vecellio & Grogan, Inc., 945 F. Supp. 930, 931 (W.D. Va. 1996) (internal quotation omitted). When considering a motion to dismiss, "the court should accept as true all well-pleaded allegations" and construe those allegations in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993). While the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level," or else dismissal is appropriate. Id.

### IV.  DISCUSSION

Although the Defendants have cited both 12(b)(1) and 12(b)(6) in their Motion to Dismiss, the court sees no reason to discuss any possible 12(b)(1) violations when 12(b)(6) is the more appropriate vehicle to adjudicate this matter.

5

1. Copyright Infringement.

The Plaintiff has not stated a valid legal claim, according to Rule 12(b)(6) of the Federal Rules of Civil Procedure because he fails to establish a *prima facie* Copyright Infringement case, specifically he has not established his ownership interest, according to the Copyright Act of 1976. 17 U.S.C. § 501(b). Federal courts have jurisdiction to hear and decide copyright infringement claims where, as preliminary matter, the plaintiff has established an ownership interest on which his right to sue for infringement depends. Dawson v. Hinshaw Music, Inc., 905 F.2d 731, 732 (4th Cir. 1990).

In this case, Blevins provides no evidence of his exclusive or partial ownership of a copyright to the water/wastewater website. He attaches a document where he is named along with the President of MECC, MECC itself and VCCS. Further, MECC is named as the sole party to the copyright designation. Viewing the complaint and its exhibits in the light most favorable to the plaintiff, at best, there appears to be a dispute as to the true owner of the copyright. (Compl. Ex. A, B, K.)[1] The Plaintiff, however, can only claim co-ownership of the copyright along with the others listed in the "names" portion of the copyright, and a co-owner, by definition, cannot be an infringer.

Blevins has failed to establish his ownership of the copyright, and therefore cannot satisfy the preliminary element of an infringement claim. It would be as if he was bringing a trespass action against co-tenants. Blevins's claims under the Copyright Act fails to set forth

---

[1] However, the court further notes that an employee cannot establish a copyright infringement claim against employer under 17 U.S.C. § 201(b)'s Work for Hire doctrine because it is the employer who owns the copyright on the employee's prepared product done within scope of employment, absent a written agreement to contrary. Miller v. CP Chems., 808 F. Supp. 1238, 1245 (D.S.C. 1992).

sufficient facts to state a claim according to 12(b), and therefore the Defendants' Motion to Dismiss shall be GRANTED.

2. Fair Labor Standards Act.

The Plaintiff claims violations under the Fair Labor Standards Act (FLSA) against the Defendants for producing a hostile work environment and for retaliation due to his objections with how the water/wastewater online courses were being run. However, Blevins both misinterprets FLSA's purpose as well as the elements necessary to state a legally valid FLSA claim, or any claim regarding a hostile work environment or retaliation for participating in a complaint process. Further, interpreting the Plaintiff's complaint in an extremely favorable light, and even construing the Complaint to contain a Title VII hostile work environment claim, the Plaintiff fails to state a valid legal claim.

The FLSA provides for minimum wage and overtime entitlement standards, spells out administrative procedures by which covered work time must be compensated, includes provisions related to child labor, equal pay, portal-to-portal activities, and exempts specified employees or groups of employees. 29 U.S.C. § 201 – 219. The FLSA does not provide any guidance with regard to a hostile environment, but it does protect against retaliation for participating in a complaint process regarding a protected characteristic. The court will interpret the Plaintiff's hostile work environment claim to be a claim under Title VII of the Civil Rights Act of 1964. 42 U.S.C. 2000(e).

**A. Whether the Plaintiff was Subjected to a Hostile Work Environment.**

Considering the facts and allegations contained in the Complaint in a very favorable light, the court has construed the FLSA hostile work environment claim to actually be a Title VII

claim. 42 U.S.C. 2000(e). Even so, the Plaintiff fails to state a valid claim because he does not proffer evidence to make a *prima facie* case.

To make a Title VII hostile work environment claim, a plaintiff must establish that the alleged harassment was: (1) unwelcome; (2) based on a protected characteristic; (3) sufficiently pervasive or severe to alter conditions of employment and to create a hostile work environment; and (4) imputable to the employer. Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 266 (4th Cir. 2001). At a minimum, the Plaintiff has failed proffer evidence to meet the second element primarily and third element tangentially.

Nowhere in the Plaintiff's Complaint does he state any mistreatment was based on a protected characteristic. The Supreme Court has interpreted Title VII as a bar to unlawful employment practice discrimination "against any individual… because of such individual's race, color, religion, sex, or national origin." Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2179 (2007) (citing 42 U.S.C. § 2000e-2(a)(1)). "Title VII does not require that all applicants be treated "equally"; it requires only that the applicant not be discriminated against on the basis of a protected characteristic." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 661 (4th Cir. 2002).[2]

In this case, the plaintiff is not complaining about any treatment he received based on a protected characteristic. He is a white male who contends the MECC workplace was made hostile because he complained about the water/wastewater project administration. Any treatment

---

[2] Protected characteristics under Title VII include race, color, sex, national origin and religion. 42 U.S.C. § 2000e. Federal statutes modeled after Title VII brought additional characteristics under the scope of federal protection. In 1967, the Age Discrimination in Employment Act (ADEA) added age to the list of protected characteristics (29 U.S.C. § 626), and in 1990 the Americans with Disabilities Act (ADA) added physical and mental disabilities (42 U.S.C. 12101). Veterans status (38 U.S.C. § 4212) and genetic information (42 U.S.C. § 2000ff), have also been added.

based on complaints regarding to the administration of a work related project falls woefully short of establishing the mistreatment was based on a characteristic the law has deemed as protected.

In addition, the Plaintiff fails to proffer evidence necessary to establish a sufficiently severe or pervasive harassment which alter the conditions of his employment under the third element of a Title VII claim. The Supreme Court has held Title VII, "does not provide a remedy for every epithet or offensive remark… [T]o be actionable, it must be sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive work environment." Wilkie v. Robbins, 127 S. Ct. 2588, 2616 (2007) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986); see also National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 115 (2002) (hostile work environments develop "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own")).

In this case, the Defendants' alleged misconduct occurred when the Plaintiff was threatened to be terminated due to his complaints, when his coworkers were threatened with termination because of their association with him, and when the MECC work environment became "hostile."[3] However, all the evidence proffered by the Plaintiff to support his claim is an email from a coworker (Ms. Moore) that shows nothing more than concern regarding the timing of the Plaintiff's departure to ensure MECC officials would be afforded enough time to find a replacement and keep the Program running.[4] Construing the email in the light most favorable to the Plaintiff, there is no indication that a severe or pervasively hostile work environment existed.

---

[3] The word "hostile" here is to be understood in its vernacular and not to be interpreted as a legal term of art.

[4] The email states " [i]f you just don't renew your contract that will not give them (MECC) enough time to find someone to take over the program and the program will be CANCELLED, meaning we will all be out of a job… [I] really would hate to lose this job as I'm sure all us would." See (Compl. Ex. N.)

9

Viewed in a light most favorable to the Plaintiff, the evidence proffered in the Complaint fails to establish two elements of a Title VII hostile work environment *prima facie* case, and therefore fails to state a valid claim according to Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6).

### B. Whether the Defendants Retaliated as a Result of Plaintiff's Complaints

Again, the Plaintiff misunderstands the law in this area. He has not established a *prima facie* case, and therefore, does not state a valid claim. The court protect employees engaged in protected activities from adverse actions brought on by the employer. It is not for the court to decide every employer-employee disagreement or hear every gripe.

The purpose of the FLSA's anti-retaliation provision is to secure substantive protections by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees… to prevent harm to individuals based on what they do, *i.e.*, their conduct." Burlington Northern & Santa Fe Ry. v. White, 126 S. Ct. at 2412 (2006). In order to establish a *prima facie* case for retaliation under FLSA, a plaintiff must show: (1) the plaintiff engaged in protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action. Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997) (citing Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)). Moreover, the plaintiff always has the burden of persuading the trier of fact that the defendant engaged in retaliatory conduct. Id. Considering the facts and allegations contained in the Complaint in a light most favorable to the Plaintiff, and guided by the principles above, it is clear the Plaintiff has not satisfied his burden to proffer a prima *facie* case in which to base a valid FLSA retaliation claim. 29 U.S.C. § 215(a)(3).

Employee complaining, of the nature stated in the Plaintiff's Complaint, does not rise anywhere near the level of protected status.[5] First, the Fourth Circuit has expressly held that the FLSA's anti-retaliation provision does not extend to internal complaints. Whitten v. City of Easley, 62 Fed. Appx. 477, 481 (4th Cir. 2003) (citing Ball v. Memphis Bar-B-Q Co., Inc., 228 F.3d 360, 364 (4th Cir. 2000) ("We would be unfaithful to the language of the testimony clause of the FLSA's anti-retaliation provision if we were to expand its applicability to intra-company complaints… .")). Making complaints regarding the administration of a program is simply not considered a protected activity.

Second, nothing but mere speculation on the part of the Plaintiff supports his claim that the Defendants acted adversely against him. In the Equal Employment Opportunity complaint, the Plaintiff even qualified such an allegation by stating, "this *probably* was in retaliation to a grievance filed when I left." (Compl. Ex. S.) (emphasis added).

Third, the Plaintiff chose to leave MECC in May of 2005, approximately three years before he filed this lawsuit and two years before filing an EEOC complaint. Therefore, Blevins cannot demonstrate that he suffered an adverse action "subsequent to or contemporaneous with" the filing of this complaint or the EEOC complaint.[6] Whitten, 62 Fed. Appx. at 481. In fact, until 2004, at least three years after submitting his first complaint, Blevins was in good stead with the MECC Administration, receiving a high grade in a September, 2003 performance review. The Plaintiff fails to fails to allege any fact that the Defendants fired him for, or threatened him with termination for expressing his complaints, even as to unprotected activity.

---

[5] See *supra* note 2, at 8.

[6] The EEOC dismissed Blevins' claim in May of 2006. (See Compl. Ex. P.) The court can only speculate, given its own analysis regarding the purpose of FLSA claims and Title VII claims in § IV(2)(A), *supra*, at 8-9 that the dismissal was based on the finding that Blevins was complaining about work-related grievances – nothing concerning his race, color, religion, sex, or other protected characteristics. See *supra* note 2, at 8.

Because Blevins cannot satisfy his *prima facie* burden under the FLSA anti-retaliation provision, his claim fails according to Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6).

For all the foregoing reasons, the Plaintiff has failed to state a valid FLSA claim under any provision of the law.[7] [8] Therefore, the Defendants' Motion to Dismissed shall be GRANTED.

3.  Equal Pay Act.

Blevins alleges a violation under the Equal Pay Act (EPA), but does not state a valid claim because he fails to establish a *prima facie* case. 29 U.S.C. § 206(d). Under EPA, a plaintiff must show the employer paid more to an employee *of the opposite sex* for performing a job under similar conditions that requires equal skill, effort, and responsibility. See 29 U.S.C. § 206(d)(1) (emphasis added) (see also Becker v. Gannett Satellite Info. Network, Inc., 10 Fed. Appx. 135 (4th Cir. 2001)). In addition, the inquiry must be specific. "The comparison to the [fe]male employee has to be made "factor by factor" and cannot be made to "a hypothetical [fe]male with a composite average of a group's skill, effort, and responsibility." Wheatley v. Wicomico County, 390 F.3d 328, 334 (4th Cir. 2004) (citing Houck v. Virginia Polytechnic Inst., 10 F.3d 204, 206 (4th Cir. 1993)). It is here that the Plaintiff's argument falls short.

The Plaintiff has failed to set forth any facts to sustain an Equal Pay Act claim. Blevins has not identified a specific female employee that received greater pay than him in his Complaint. He failed to describe any job done by a comparative female requiring equal skill, effort, and responsibility, while performed under similar conditions. Instead, the Plaintiff

---

[7] The Defendants' Motion [10] addresses the minimum wage and maximum hour provisions of FLSA. However it is an uncontested fact that Blevins was a professor at MECC and employed in a "professional capacity," thus exempting MECC from both the minimum wage and the maximum hour provisions of the FLSA. See 29 U.S.C. § 213(a)(1).

[8] There is also a claim about a camera and termination threats to the Plaintiff, and a threat of prosecution to another coworker. However, there is no background or substantiating documentation to warrant any further discussion.

12

misconstrues the law and seeks remedy for his perceived mistreatment while employed by MECC. Therefore, the Plaintiff has failed to set forth sufficient facts to establish a *prima facie* case under EPA.

In addition, EPA has a two-year statute of limitations, unless the plaintiff claims that the defendant's conduct was willful, in which case a three-year period applies. See 29 U.S.C. § 255(a). In this case, the Plaintiff was last employed with the Defendants in May of 2005, and filed his complaint on May 5, 2008. The Plaintiff is barred from making an EPA claim due to the statue of limitations. In addition, the Plaintiff has failed to establish the exact date this pay disparity began, what date his employment terminated, or whether the Defendant's conduct was willful. Therefore, it is not possible for the court to determine when the statute of limitations began to run, if it should be tolled, or extended.

The Plaintiff cannot establish the necessary elements for an EPA claim according to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and cannot bring an EPA claim under its statutes of limitations (29 U.S.C. § 255(a)). Therefore, the Defendants' Motion to Dismiss will be GRANTED.

4. Sovereign Immunity.

All the Defendants, without some showing otherwise, are afforded immunity from the civil claims at bar. The Eleventh Amendment to the United States Constitution grants sovereign immunity to states from suits brought by private citizens in federal court. U.S. Const. Amend. XI. This provision also provides immunity to state agencies, see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984), and, subject to an exception where injunctive relief is sought, to individual state officials acting in their official capacities, see Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); see also Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995).

In this case it is undisputed that MECC and the VCCS are entities of the state[9]. The Plaintiff has also sued four individuals in their official capacity as employees of the state. Since Blevins entire complaint stems from his professional interaction with fellow employees of the Commonwealth while he was a co- employee of MECC, the Defendants are entitled to qualified immunity from Blevins' civil claims. The Plaintiff has not claimed that the Defendant's actions were made outside the scope of their official employment. Therefore, the court also holds that the Defendants are immune from the civil action brought by the Defendant.

For the reasons stated above, the Defendants' Motion to Dismiss will be GRANTED.

## IV. CONCLUSION

In conclusion, Blevins has failed to demonstrate that he is entitled to relief under the Copyright Act, the FLSA, or the EPA. It is also held that the Defendants are immune from the Plaintiff's civil action under the Eleventh Amendment's sovereign immunity doctrine and its correlating qualified immunity doctrine for individual state employees. Indeed, the court has attempted to decipher the Plaintiff's Complaint and exhibits in a light most favorable to the Plaintiff, according to the court's Rule 12(b)(6)'s standard of review, to deduce what legal claim he might have hinted at. However, there is quite simply nothing included in the Plaintiff's Complaint, or heard during oral argument, that will serve the Plaintiff's lawsuit. The Plaintiff

---

[9] Chapter 23 of the Code of Virginia (1950), as amended, sets forth the creation of the VCCS. Va. Code Ann. §§23-214 – 23-231. In Section 215, the legislature establishes the VCCS as the state agency responsible for administering the Commonwealth's community colleges. Id at § 215. Therefore, MECC is not an independent legal entity. The legislature did not specifically designate the individual community colleges or grant them any powers, specifically the power to sue or be sued. Goff v. J. Sargeant Reynolds Cmty. College, 68 Va. Cir. 382, 383 (2005) (finding that J. Sargeant Reynolds Community College was not an "independent legal entity").

will be given thirty (30) days, from the date of the corresponding Order, to amend his Complaint, if he so chooses. Accordingly, for the reasons stated herein, the Defendants' Motion to Dismiss will be GRANTED.

Entered this 10th day of October, 2008.

        s/Jackson L. Kiser
        Senior United States District Judge